UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MICHAEL SERPA,<br><br>    Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN [1], Acting Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-11-0121-RHW<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

Before the Court are the parties' cross-motions for summary judgment, ECF Nos. 22, 25. Maureen J. Rosette represents Plaintiff Michael Serpa. Assistant United States Attorney Pamela J. DeRusha and Special Assistant United States Attorney David J. Burdett represent the Defendant Commissioner of Social Security (the "Commissioner"). Plaintiff brings this action seeking judicial review under 42 U.S.C. § 405(g) of the Commissioner's final decision denying his application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") under Sections 216(i), 223(d), and

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Fed. R. Civ. P. 25(d), Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g).

**ORDER GRANTING DEF.'S MOTION FOR SUMMARY JUDGMENT AND DENYING PL.'S MOTION FOR SUMMARY JUDGMENT \* 1**

1614(a)(3)(A) of the Social Security Act. After reviewing the administrative record and briefs filed by the parties, the Court denies Plaintiff's Motion for Summary Judgment, and directs entry of judgment in favor of Defendant.

## I.    Jurisdiction and Procedural History

Plaintiff's claim is properly before this Court pursuant to 42 U.S.C. § 405(g). On September 13, 2006, Plaintiff filed an application for a period of disability, DIB, and SSI benefits, alleging disability beginning April 1, 2005. Tr. 296-304. His application was denied initially on December 19, 2006, and again on reconsideration on May 1, 2007. Tr. 195-98, 207-19. Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 219-20. On June 28, 2008, ALJ R.J. Payne presided over the hearing and on August 26, 2008, denied benefits. Tr. 181-94. However, on April 23, 2009, the Appeals Council remanded the case back to the ALJ for additional proceedings. Tr. 239-41.

On October 23, 2009, the ALJ held a subsequent hearing and took testimony from Anthony Francis, M.D., and Marian Martin, Ph.D., impartial medical experts. Tr. 86-112. Prior to the hearing, on September 24 2009, Plaintiff was struck by a car and injured. Tr. 89. As a result, he was unable to testify at the October 2009 hearing. *Id.* The ALJ then held a supplemental hearing where Plaintiff and Vocational Expert ("VE") Daniel McKinney, testified on January 20, 2010. Tr. 46-85. On March 19, 2010, the ALJ issued a decision in which he denied Plaintiff benefits. Tr. 17-35. On March 3, 2010, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision and subject to judicial review. Tr. 1-3.

## II.    Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

**ORDER GRANTING DEF.'S MOTION FOR SUMMARY JUDGMENT AND DENYING PL.'S MOTION FOR SUMMARY JUDGMENT \* 2**

q:\rhw\acivil\2011\serpa (ss)\order sj.docx

can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if his impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering claimant's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920; *Tackett v. Apfel,* 180 F.3d 1094, 1098 (9th Cir. 1999); *Lounsburry v. Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

Step 1: Is the claimant engaged in substantial gainful activities? 20 C.F.R. §§ 404.1520(b), 416.920(b). Substantial gainful activity is work done for pay and requires compensation above the statutory minimum. 20 C.F.R. §§ 404.1574, 416.972; *Keyes v. Sullivan*, 894 F.2d 1053, 1057 (9th Cir. 1990). If the claimant is engaged in substantial activity, benefits are denied. 20 C.F.R. §§ 404.1571, 416.920(b). If he is not, the ALJ proceeds to step two.

Step 2: Does the claimant have a medically-severe impairment or combination of impairments? 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. A severe impairment is one that lasted or must be expected to last for at least 12 months and must be proven through objective medical evidence. 20 C.F.R. §§ 404.1508-09, 416.908-09. If the impairment is severe, the evaluation proceeds to the third step.

Step 3: Does the claimant's impairment meet or equal one of the listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity? 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R.

**ORDER GRANTING DEF.'S MOTION FOR SUMMARY JUDGMENT AND DENYING PL.'S MOTION FOR SUMMARY JUDGMENT \* 3**

§ 404 Subpt. P. App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. *Id.* If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step.

Step 4: Does the impairment prevent the claimant from performing work he has performed in the past? 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant is able to perform his previous work, he is not disabled. *Id.* If the claimant cannot perform this work, proceed to the fifth and final step.

Step 5: Is the claimant able to perform other work in the national economy in view of his age, education, and work experience? 20 C.F.R. §§ 404.1520(f), 416.920(f).

The claimant bears the burden of proof at steps one through four above. *Molina v. Astrue,* 674 F.3d at 1104, 1111 (9th Cir. 2012); *Lockwood v. Comm'r of Soc. Sec. Admin.,* 616 F.3d 1068, 1071 (9th Cir. 2010). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c); 416.960(c)(2); *Beltran v. Astrue,* 676 F.3d 1203, 1206 (9th Cir. 2012).

Plaintiff has the burden of showing that drug and alcohol addiction ("DAA") is not a contributing factor material to disability. *Ball v. Massanari,* 254 F.3d 817, 823 (9th Cir.2001). The Social Security Act bars payment of benefits when drug addiction and/or alcoholism are a contributing factor material to a disability claim. 42 U.S.C. §§ 423(d)(2)(C) and 1382(a)(3)(J); *Bustamante v. Massanari,* 262 F.3d 949 (9th Cir.2001); *Sousa v. Callahan,* 143 F.3d 1240, 1245 (9th Cir.1998). If there is evidence of DAA and the individual succeeds in proving disability, the Commissioner must determine whether DAA is material to the determination of disability. 20 C.F.R. §§ 404.1535 and 416.935. If an ALJ finds that the claimant is

**ORDER GRANTING DEF.'S MOTION FOR SUMMARY JUDGMENT AND DENYING PL.'S MOTION FOR SUMMARY JUDGMENT * 4**

not disabled, then the claimant is not entitled to benefits and there is no need to proceed with the analysis to determine whether substance abuse is a contributing factor material to disability.

### III.    Standard of Review

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue,* 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). Substantial evidence is "more than a mere scintilla but less than a preponderance. *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.1997) (citation omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In determining whether this standard has been satisfied, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'"  *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 882 (9th Cir. 2006) (citation omitted).

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina,* 674 F.3d at 1111. Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders,* 556 U.S. 396, 409–10 (2009).

**ORDER GRANTING DEF.'S MOTION FOR SUMMARY JUDGMENT AND DENYING PL.'S MOTION FOR SUMMARY JUDGMENT \* 5**

#### IV. Statement of Facts

The facts of the case are set forth in detail in the transcript and proceedings, and only briefly summarized here. At the time of the hearing on January 20, 2010, Plaintiff was 49 years old and resided with his mother. Tr. 50, 65. He obtained a GED and worked as a drywall installer for approximately thirty-two years, until he stopped working in 2005. Tr. 51-52, 78. Plaintiff is divorced with four adult children. Tr. 50-51. At age 28, Plaintiff was involved in a motorcycle accident. Tr. 52. In September of 2009 Plaintiff was struck by a vehicle and sustained a head injury and trauma. Tr. 31, 60. Although hospitalized for several weeks, Plaintiff was expected to make a full recovery. Tr. 31.

Plaintiff testified that he cannot work due to pain in his neck, lower back and mid back, and knees. Tr. 52. Plaintiff also testified that his "memory was kind of slipping," which he noted was worsening after the September 2009 accident. Tr. 54.

#### V. The ALJ's Findings

The ALJ determined that Plaintiff was not disabled under sections 216(i), 223(d), or 1614(a)(3)(A) of the Social Security Act and denied his application for DIB and SSI benefits on March 19, 2010. Tr. 17-35.

At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 1, 2005, the alleged onset date. Tr. 22.

At **step two**, the ALJ found that Plaintiff's degenerative disc disease – lumber and cervical spine, hepatitis C, status-post ankle fracture, degenerative joint disease-ankle and right knee, dysthymic disorder, pain disorder, anti-social features, and substance abuse were severe impairments according to the Social Security Act's definition. Tr. 23 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

**ORDER GRANTING DEF.'S MOTION FOR SUMMARY JUDGMENT AND DENYING PL.'S MOTION FOR SUMMARY JUDGMENT * 6**

q:\rhw\acivil\2011\serpa (ss)\order sj.docx

At **step three**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. § 404, Subpt. P, App. 1 ("the Listings"). Tr. 23-26. As to the impairments, the ALJ considered whether Plaintiff's spinal impairments met a listing for 1.04 – *Disorders of the Spine*, and determined that they did not because Plaintiff's lumbosacral spine MRI showed no evidence of root compression, his thoracic spine MRI revealed only minimal vertebral spondylosis without cord deformity, and his cervical spine MRI showed only mild vertebral spondylosis. Tr. 24. The ALJ also considered whether Plaintiff's knee and ankle impairments met a listing for 1.02A – *Major Dysfunction of Joints*. The ALJ determined they did not because the evidence did not show joint space narrowing, bony destruction, or ankylosis. Tr. 23. Medical expert, Anthony Francis, M.D., testified Plaintiff's ankle condition could possibly equal listing 1.02A, but that his drug seeking behavior complicated such a finding. *Id.*

Further, the ALJ considered whether Plaintiff's hepatitis C impairment met any listing. Tr. 24. The ALJ found that no listing corresponded exactly with this condition, but reviewed the listings where hepatitis C would have the most effect. Tr. 24. After review, the ALJ found that Plaintiff's hepatitis C did not meet any of the listings. *Id.* In making this finding, the ALJ noted the evidence was limited as to the impairment and Plaintiff had not sought treatment for or complained of any symptoms. *Id.*

Finally, the ALJ considered whether Plaintiff's mental impairments met or equaled the criteria of listings 12.04 and 12.09, and determined it did not because the mental impairment did not result in at least two "marked" limitations or difficulties. Tr. 24-26. The ALJ found that Plaintiff had mild restrictions in activities of daily living, mild to moderate difficulties in social functioning, mild difficulties with regard to concentration, persistence or pace, and zero episodes of

**ORDER GRANTING DEF.'S MOTION FOR SUMMARY JUDGMENT AND DENYING PL.'S MOTION FOR SUMMARY JUDGMENT \* 7**

q:\rhw\acivil\2011\serpa (ss)\order sj.docx

decompensation of extended duration. *Id.* The ALJ also found the evidence failed to establish the presence of the "paragraph C" criteria. *Id.*

At **step four**, relying on the VE's testimony, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). Tr. 27. However, the ALJ determined that Plaintiff could not perform past relevant work as a drywall installer because the VE testified that an individual with Plaintiff's age, education, work experience, and RFC could not perform such work. Tr. 33, 34.

At **step five**, after considering his age, education, work experience, and RFC, the ALJ found that Plaintiff could perform a significant number of existing jobs in the national economy. Tr. 34. The ALJ based this decision on the VE's testimony and his review of the Dictionary of Occupational Title ("DOT") that individuals with Plaintiff's age, education, work experience, and RFC can perform jobs like an "Assembler." *Id*. The VE testified that this work would be classified as sedentary to light and would allow an option to sit or stand. Tr. 35. As a result of these findings, the ALJ concluded that Plaintiff was not disabled under the meaning of the Social Security Act. Tr. 35.

## VI.  Issues for Review

Plaintiff alleges the ALJ improperly evaluated the medical opinions of his examining physicians. He asserts the ALJ failed to provide "specific" and "legitimate" reasons for rejecting those opinions. Thus, Plaintiff contends the ALJ's conclusions are not supported by substantial evidence. ECF No. 23 at 13, 19.  Plaintiff also claims that he is "much more limited from a physical and psychological standpoint" than determined by the ALJ. *Id.* Defendant responds the ALJ properly evaluated the medical evidence and that the Commissioner's decision is free of legal error and supported by substantial evidence. ECF No. 26 at 2.

**ORDER GRANTING DEF.'S MOTION FOR SUMMARY JUDGMENT AND DENYING PL.'S MOTION FOR SUMMARY JUDGMENT \* 8**

## VII. Discussion

**A. The ALJ Properly Evaluated the Medical and Psychological Opinion Evidence Re: Plaintiff's Physical and Mental Impairments**

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." *Morgan v. Comm'r of the Social Sec. Admin.*, 169 F.3d 595, 601 (9th Cir.1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Id.* at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755, (9th Cir.1989).

In evaluating medical or psychological evidence, a treating or examining physician's opinion is entitled to more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with "clear" and "convincing" reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only

be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). An ALJ can satisfy this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating her interpretation thereof, and making findings. *Tommasetti v. Astrue*, 533 F.2d 1035, 1041 (9th Cir. 2008).

Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific and legitimate reasons for disregarding a treating or examining physician's opinion. *Flaten v. Sec. of Health and Human Servs.*, 44 F.3d 1453, 1463–64 (9th Cir. 1995). The ALJ is not bound to a medical source's opinion concerning a claimant's limitations on the ultimate issue of disability. *Magallanes*, 881 F.2d at 751. If the record as a whole does not support the medical source's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

### 1. Summary of Medical and Psychological Opinion Evidence

At various times from November 1979 through at least May 2008, Plaintiff sought medical treatment at several hospitals in Washington and Idaho. Tr. 559-567, 605-607, 391-424, 667-682, 629-666, 467-504, 617-628, 768-777, 897-958. During that time, Plaintiff was examined by William M. Shanks, M.D., on two occasions, October 9, 2007, and again on August 19, 2008. Tr. 551-558; 716-721. On both examinations, Dr. Shanks diagnosed Plaintiff with degenerative disc disease throughout the cervical, thoracic, and lumber spine without evidence of a signification radicular component. Tr. 553, 718. In addition to this diagnosis, Dr. Shanks commented that Plaintiff was difficult to examine because he overreacted to any pressure, that his posture was basically normal, he walked with normal gait, and there was no specific weakness in his lower or upper extremities.

**ORDER GRANTING DEF.'S MOTION FOR SUMMARY JUDGMENT AND DENYING PL.'S MOTION FOR SUMMARY JUDGMENT \* 10**

Tr. 551-54. Despite these observations, in the first assessment, Dr. Shanks concluded that Plaintiff's overall work level was "severely limited" and that he would have difficulty sitting or standing for any length. *Id.* As to the second assessment, Dr. Shanks, again, opined that Plaintiff was "severely restricted" and that he was probably unemployable based on his condition. Tr. 716-18.

However, on October 18, 2006, Plaintiff was also examined by Dr. George Bagby, M.D. Tr. 447. During that examination, Dr. Bagby observed that Plaintiff had normal leg alignment, that his straight leg raising, hip motion, and knee motion were all normal, and that his response to pain was "bizarre" and concluded that Plaintiff could perform sedentary work. Tr. 447-449. Further, Lori Taylor, ARNP, also noted in December 2006 that Plaintiff's back pain was stable. Tr. 475. In October of 2007, Dr. Thomas Tobin, M.D., also noted that Plaintiff walked into the ER without any difficulty and his physical exam was normal, despite Plaintiff rating his back pain as 10/10 in severity. Tr. 646.

Plaintiff was also evaluated by examining psychologist W. Scott Mabee, Ph.D., on four occasions who assessed his mental health limitations. Tr. 435-45, 534-50, 706-15, 722-29. During the first evaluation, Dr. Mabee diagnosed Plaintiff with dysthymia and gave a rule out diagnosis on pain disorder associated with general medical condition with chronic, paranoid, and antisocial features. Tr. 444. Dr. Mabee concluded that Plaintiff had moderate limitations regarding his ability to exercise judgment, make decisions, and relate to coworkers, supervisors, and the public. Dr. Mabee found Plaintiff markedly limited in regard to his ability to respond appropriately to and tolerate the pressures of a normal work setting, maintain appropriate behavior, and control physical movements. Tr. 435-45. Finally, Dr. Mabee noted that Plaintiff was polite, cooperative, and had an unremarkable mood and effect. Tr. 443.

**ORDER GRANTING DEF.'S MOTION FOR SUMMARY JUDGMENT AND DENYING PL.'S MOTION FOR SUMMARY JUDGMENT \* 11**

q:\rhw\acivil\2011\serpa (ss)\order sj.docx

During the second, third, and fourth evaluations, Dr. Mabee opined that Plaintiff suffered from a pain disorder with medical and psychological factors, dysthymic disorder, and cluster B personality features. Tr. 536, 714, 724. During the subsequent examinations, Dr. Mabee made similar findings, as compared to the first evaluation, concerning Plaintiff's mental limitations. Tr. 549. However, during the third evaluation, Dr. Mabee noted that Plaintiff would have difficulty interacting appropriately and meaningfully with others but could understand and follow simple verbal and written instructions, and that his pace of performance and persistence would be average. Tr. 714-15. In addition, during his examinations Dr. Mabee observed Plaintiff's speech flow was normal, his organization direct, his thoughts concrete and abstract, his knowledge and intelligence average, and that Plaintiff could follow simple and complex verbal and written instructions. Tr. 713, 535-36, 443-44. When Dr. Mabee made his evaluations, he reviewed no other medical records, aside from his own evaluations. Tr. 441, 534, 711.

### 2. William M. Shanks, M.D.

Plaintiff first argues the ALJ improperly rejected the opinion of Dr. Shanks, his examining orthopedist, by failing to set forth "specific enough" reasons supported by substantial evidence. ECF Nos. 23 at 15, 27 at 2. In rejecting Dr. Shanks' opinions, the ALJ stated that he afforded little weight to either opinion because the opinions were inconsistent with his own findings, inconsistent with other medical evidence, and unsupported by the evidence. Tr. 29-30.

Here, the ALJ's rejection of Dr. Shanks' opinions need only be supported by "specific and legitimate" reasons because both opinions were contradicted by other medical evidence. Tr. 459-66, 697-700, 739-52, 761-66; *see Lester*, 81 F.3d at 830-31. When rejecting Dr. Shanks' opinions, the ALJ provided three reasons: 1) inconsistency with his own findings, 2) inconsistency with other medical evidence, and 3) lack of support by the evidence. Tr. 29-31. These are "specific and

**ORDER GRANTING DEF.'S MOTION FOR SUMMARY JUDGMENT AND DENYING PL.'S MOTION FOR SUMMARY JUDGMENT \* 12**

legitimate" reasons for rejecting an opinion. *See,e.g., Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (rejecting the opinions of a physician whose statements were internally inconsistent); *Morgan*, 169 F.3d at 600; *Batson*, 359 F. 3d at 1195 (noting the ALJ may discredit a physicians' opinion that is unsupported by the record as a whole).

The Court also finds there is substantial evidence to support the ALJ's findings. The ALJ's reasoning was based on the internal inconsistency of Dr. Shanks' conclusions with his own observations and those of other medical providers, including the lack of support in the record. Dr. Shanks' opinions are inconsistent with his own findings as he concluded that Plaintiff was "severely limited" while, on the other hand, noting that Plaintiff's posture and gait were normal and that he had no specific weakness in his upper or lower extremities. Tr. 29. Further, Dr. Shanks' opinions are inconsistent with other evaluating physicians, such as Dr. Bagby, who concluded that Plaintiff had normal leg alignment, hip and knee motion, and that he could perform sedentary work. Tr. 447-449.

Moreover, the ALJ properly gave little weight to Dr. Shanks' opinion as he did not take into account all of Plaintiff's medical records, "including those that reflect[ed] his narcotic-seeking behavior." Tr. 31. The ALJ found that Dr. Shanks failed to incorporate Plaintiff's extensive pattern of drug-seeking behavior into his physical limitations, which he cited as an additional specific and legitimate reason supported by substantial evidence to reject the examining physician's opinion. *See Coffman v. Astrue*, 469 F. App'x 609, 611 (9th Cir. 2012) (upholding the ALJ's rejection of an examining psychologist's opinion, in part, due to the fact that plaintiff "periodically concealed" from treatment providers his substance abuse issues).

In this case, there is no dispute that Plaintiff concealed his drug-seeking behaviors from his treatment providers. For example, he was caught by a pharmacy

**ORDER GRANTING DEF.'S MOTION FOR SUMMARY JUDGMENT AND DENYING PL.'S MOTION FOR SUMMARY JUDGMENT \* 13**

attempting to alter the dosage of his Lortab prescription by crossing out the quantity of 10 and changing it to 60. Tr. 392, 397. Further, Plaintiff was discharged from Nurse Taylor's care in September of 2007 after failing three separate drug tests for cocaine and hydrocodone. Tr. 571-79, 586-90, 599-604. Also, Plaintiff reported to various emergency rooms claiming that his pain medications had been stolen on at least three different occasions. Tr. 637, 663-64, 7323-33, 735.

      Furthermore, at the hearing on January 20, 2010, Plaintiff admitted to using illicit substances in the past, attending Deaconess Medical Center for drug treatment, and relapsing twice. Tr. 59, 70-72. However, Plaintiff denied drug use since 2007, despite an extensive pattern in the record of drug seeking behavior after being denied narcotics for pain on multiple occasions. Tr. 663-64, 666, 673, 703-704. On September 24, 2009, Plaintiff was struck by a car and hospitalized for several weeks. Tr. 60-61. Notably, while hospitalized, Plaintiff's drug screen tested positive for marijuana, cocaine, narcotics, Benzodiazepines, and Methadone. Tr. 768-70. When questioned by the ALJ at the hearing on January 20, 2010, Plaintiff denied using illicit substances prior to the accident. Tr. 72. The ALJ found these denials under oath, coupled with Plaintiff's narcotic-seeking behavior and history of substance abuse "irreparably harmed" his credibility [2] concerning his physical limitations. Tr. 31.

      A review of the entire medical record indicates stable to mild symptoms punctuated by a pattern of narcotic and illegal drug seeking behavior and use. The Court agrees that substantial evidence supports the ALJ's finding that Dr. Shanks' opinions were inconsistent with the medical record as a whole. Therefore, the ALJ met his burden of giving "specific and legitimate" reasons based on substantial

---

[2] Notably, Plaintiff does not challenge the ALJ's negative credibility assessment, making it a non-issue on appeal. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n. 2 (9th Cir. 2008).

**ORDER GRANTING DEF.'S MOTION FOR SUMMARY JUDGMENT AND DENYING PL.'S MOTION FOR SUMMARY JUDGMENT \* 14**

evidence for rejecting Dr. Shanks' opinion regarding Plaintiff's physical limitations.

### 3.  W. Scott Mabee, Ph.D.

Next, Plaintiff contends the ALJ did not properly consider the opinions of Dr. Mabee, his examining psychologist. ECF No. 23 at 16-20. As detailed above, Dr. Mabee and his associates [3] conducted four evaluations of Plaintiff in September 2006, September 2007, July 2008, and June 2009. Tr. 435-45, 534-50, 706-15, 722-29. The ALJ gave Dr. Mabee's opinions little weight because they were inconsistent with the evaluative findings, inconsistent with the remainder of the medical evidence, and made without review of other medical evidence or knowledge of Plaintiff's substance abuse and narcotic-seeking behavior.  Tr. 25, 31-33. Again, as Dr. Mabee's opinions were contradicted by other medical evidence, the ALJ needed only to provide specific and legitimate reasons to reject the opinions. Tr. 697-700, 739-52; *Lester*, 81 F.3d at 830-31. The Court agrees the ALJ properly weighed Dr. Mabee's opinions.

First, the ALJ permissibly did not accord significant weight to Dr. Mabee's opinions as they were inconsistent with his evaluative findings and the remainder of the medical evidence. Tr. 25. For instance, in the 2006 and 2007 evaluations, Dr. Mabee concluded that Plaintiff had marked limitations in his ability to control physical or motor movements, maintain appropriate behavior, and respond appropriately to the pressures of a normal work setting. Tr. 437, 549. Dr. Mabee also assessed Plaintiff as markedly limited in his ability to exercise judgment and again in some areas of social functioning. Tr. 78. In contrast to the severe limitations noted *supra*, Dr. Mabee also found that Plaintiff was polite, cooperative, had average intelligence, could follow simple and complex verbal and

---

[3] Victoria Carroll, M.S., and Amy Robinson, M.S., conducted psychological evaluations of the Plaintiff under the supervision of Dr. Mabee.

**ORDER GRANTING DEF.'S MOTION FOR SUMMARY JUDGMENT AND DENYING PL.'S MOTION FOR SUMMARY JUDGMENT \* 15**

written instructions, enjoyed being around others, and would likely feel comfortable in social situations. Tr. 437, 708, 715, 443-444. Moreover, Dr. Mabee and his evaluators found that Plaintiff had an average Full Scale IQ score and a GAF score of 60-65. [4] On another examination Dr. Mabee recorded that Plaintiff responded appropriately to questions, and received a normal score on a Mini Mental Status Exam, IQ Test, General Memory Index Tests, Working Memory and Immediate Memory Tests. Tr. 535-36. Furthermore, Dr. Mabee found that Plaintiff's MMPI-2 diagnostic results indicated "a general tendency toward over-endorsement of psychological distress." Tr. 536.

Second, as with the opinions of Dr. Shanks, the ALJ determined that Dr. Mabee's opinions did not take into account Plaintiff's history of substance abuse and narcotic-seeking behaviors. Tr. 25, 33. Thus, they did not allow the evaluators a full review of the medical background with regard to Plaintiff's mental limitations. *Id.* Specifically, the ALJ noted that "[a]s discussed by the psychological experts at the hearing . . . abuse and addiction can greatly affect the severity of any underlying mental impairment." Tr. 25. Here, Plaintiff denied all substance abuse issues during his evaluations, and it is undisputed that Dr. Mabee reviewed no other records than his own in conjunction with Plaintiff's assessments. Tr. 549, 708, 723. As the ALJ correctly pointed out, Dr. Mabee did not review Plaintiff's entire treatment history. As such, the ALJ appropriately relied on this factor in not affording his opinion controlling weight.

---

[4] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 n. 2 (9th Cir. 1998). A GAF score of 60–65 indicates "[s]ome mild symptoms (e.g., depressed mood or mild insomnia) or some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well . . . . (quoting Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) ("DSM–IV–TR") at 34).

**ORDER GRANTING DEF.'S MOTION FOR SUMMARY JUDGMENT AND DENYING PL.'S MOTION FOR SUMMARY JUDGMENT * 16**

Finally, the ALJ correctly afforded Dr. Mabee's opinions little weight as inconsistent with the remainder of the medical evidence. Tr. 25. From Plaintiff's alleged onset date through his initial evaluation with Dr. Mabee in 2006, there is no evidence of mental impairment or any evidence that Plaintiff sought counseling or mental health treatment. Tr. 31-32. In sum, the Court agrees the ALJ gave specific and legitimate reasons supported by substantial evidence in discounting the opinions of Dr. Mabee.

**B.     The ALJ's Residual Functional Capacity Assessment**

Plaintiff implicitly argues the ALJ erred in assessing his residual functional capacity ("RFC"). ECF No. 23 at 16, 20. This argument assumes the opinions of Dr. Shanks and Dr. Mabee were not properly discounted. However, the Court has determined the ALJ properly evaluated the medical opinion evidence. This Court affirms that ALJ's determination of a plaintiff's RFC if the ALJ applied the proper legal standard and the decision is supported by substantial evidence. *Morgan*, 169 F.3d at 599.Therefore, because the ALJ's RFC assessment included only those limitations supported by substantial evidence, his decision was free of legal error.

### VIII.  Conclusion

Having reviewed the record in its entirety, and the ALJ's conclusions, the Court finds the ALJ's decision is free of legal error and supported by substantial evidence.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, ECF No. 22 is **DENIED.**

2. Defendant's Motion for Summary Judgment, ECF No. 25 is **GRANTED.**

3. The Commissioner's decision denying Plaintiff benefits is **AFFIRMED**.

///

///

///

**ORDER GRANTING DEF.'S MOTION FOR SUMMARY JUDGMENTAND DENYING PL.'S MOTION FOR SUMMARY JUDGMENT \* 17**

q:\rhw\acivil\2011\serpa (ss)\order sj.docx

1      4. The District Court Executive is directed to enter judgment in favor of
2  Defendant and against Plaintiff.
3      **IT IS SO ORDERED.** The District Court Executive is directed to enter this
4  Order, forward copies to counsel and **close the file**.
5      **DATED** this 19th day of August, 2013.
6
7                        *s/Robert H. Whaley*
                         ROBERT H. WHALEY
8                     Senior United States District Judge

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**ORDER GRANTING DEF.'S MOTION FOR SUMMARY JUDGMENT AND DENYING PL.'S MOTION FOR SUMMARY JUDGMENT \* 18**

q:\rhw\acivil\2011\serpa (ss)\order sj.docx